IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CLOVIA M. BROOKS AUSBIE,** )<br>    **Plaintiff,** )<br>vs. )<br> )<br>**WELLS FARGO BANK, et al.,** )<br>    **Defendants.** ) | <br><br>No. 3:19-CV-2019-L-BH<br><br><br>Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the case should be dismissed with prejudice for failure to state a claim.

### I.  BACKGROUND

On August 23, 2019, Clovia M. Brooks Ausbie (Plaintiff), a self-described "Federal Agent Member" of the "Wall of Tolerance", filed this *pro se* "civil rights lawsuit" against Wells Fargo, Chase Bank, Bank of America, the City of Dallas, the Dallas Housing Authority, and J.J.W. Properties.[2]  (*See* doc. 3 at 1; doc. 8 at 5; doc. 13 at  doc. 14 at 1, 4-5.)[3]  She subsequently also named Direct TV, AT&T, Just Energy, Liberty Power, and possibly others as defendants. (*See* doc. 8 at 4; doc. 13 at 1; doc. 14 at 1.)

Based on the almost 200 pages that comprise Plaintiff's pleadings, it appears that around 1992, she entered into a contract for the purchase of a home on Lantana Street in Dallas, Texas. (*See* doc. 12 at 58, 62, 68.)  She paid taxes on the home for several years. (*See id.* at .)  These taxes are allegedly being held at Bank of America.  (*See* doc. 8 at 1.) At some point, she began receiving

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for judicial screening.

[2] Although Plaintiff initially listed "IRS" and "SSI" as defendants in the style of the case on her complaint, she later clarified in response to a magistrate judge's questionnaire that she did not intend to sue them. (*See* doc. 8 at 2, 3.)

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Section 8 housing assistance payments, and beginning in 1997, she entered into a series of leases for the Lantana Street residence. (*See* doc. 3 at 2; doc. 12 at 46, 83, 125, 138, 151-52, 156.) Plaintiff contends that after she was injured on the job, she sued her employer in 2005 and won $40 million, which was being held at Wells Fargo, but she has not seen or heard of it since. (*Id.* doc. 3 at 1; doc. 12 at 4.) While she was in and out of the hospital, her former landlord allegedly found out about the lawsuit money, and he and Wells Fargo and Chase Bank and unidentified others took the money, opened a real estate company in her name, and used her social security number to run it. (*Id.* at 1, 4-6; doc. 12 at 2; doc. 14 at 1.) J.J.W. Properties is also allegedly using her name and paying others' bills with Direct TV, AT&T, and Just Energy, and Liberty Power is sending her bills that she does not owe. (*See* doc. 8 at 4; doc. 13 at 1-2.)

On May 28, 2013, Plaintiff's landlord gave her notice that her tenancy would be terminated in 60 days even though she was not behind on her rent; eviction proceedings initiated against her in August 2013 were ultimately successful. (doc. 12 at 5, 143, 145-50.) The landlord also "put out" her daughter, who lived with her and was about to give birth to her first child. (doc. 3 at 5; doc. 8 at 8.) DHA would not help them. (doc. 12 at 4-5.) In 2017, its representative would not assist Plaintiff in obtaining housing in the apartment complex of her choice and instead put her in a different apartment complex that she does not like. (*See* doc. 8 at 7, 8.) She claims that these actions constitute housing discrimination. (*See id.* )

Plaintiff seeks the return of her home, return of the taxes she paid on it, her $40 million lawsuit proceeds, to remove her name and social security number from the real estate company, to required DHA to help her daughter with a housing voucher, and "$48 million or billion of dollars." (doc. 3 at 1, 3; doc. 8 at 5, 9; doc. 13 at 2; doc. 14 at 1.) No process has been issued.

## II. PRELIMINARY SCREENING

Because Plaintiff has been permitted to proceed *in forma pauperis*, her complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). It provides for *sua sponte* dismissal of the complaint, or any portion thereof, if found to be frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

The analysis for determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is the same one employed under Fed. R. Civ. P. 12(b)(6). *See Fierro v. Knight Transp.*, No. EP-12-CV-218-DCG, 2012 WL 4321304, at *7 (W.D. Tex. Sept. 18, 2011), slip copy, (citing *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam) (applying the same standard of review applicable to dismissals under Rule 12(b)(6) for screening dismissals under § 1915(e)(2)(B)(ii)); *Holt v. Imam*, No. C-07-406, 2008 WL 1782351, at *2 (S.D. Tex. Apr. 17, 2008) (citing *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (noting that § 1915A(b)(1), § 1915(e)(2)(B)(ii), and Rule 12(b)(6) all employ the same language—"failure to state a claim upon which relief may be granted"). Under Rule 12(b)(6), a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[P]leadings" for purposes of a motion to dismiss include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the

3

plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555*; accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*; *accord Iqbal*, 556 U.S. at 678.

### III. FAIR HOUSING CLAIMS

The only readily identifiable claim raised by Plaintiff's filings appears to be a claim of housing discrimination.

Section 3604(b) of the Fair Housing Act (FHA) makes it unlawful "[t]o discriminate against any person in terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Fifth Circuit has held that in order to establish a prima facie claim of disparate treatment[4] under the FHA, the plaintiff must establish "(1) membership in [a] protected class, (2) that [she] applied and was qualified to rent or purchase housing[,] (3) that

---

[4] "Disparate treatment" is "deliberate discrimination." *L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 401 (5th Cir. 2013) (citing *Munoz v. Orr,* 200 F.3d 291, 299 (5th Cir.2000)).

[she] was rejected, and (4) that the housing thereafter remained open to similarly situated applicants." *Crain v. City of Selma*, 952 F.3d 634, 640–41 (5th Cir. 2020) (citing *Inclusive Comms. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 910 (5th Cir. 2019)). A plaintiff has the burden to show intentional discrimination "either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden-shifting method known as the *McDonnell Douglas* test." *Arbor Bend Villas Hous., L.P. v. Tarrant Cty. Hous. Fin. Corp.*, No. CIV.A. 4:02-CV-478Y, 2005 WL 548104, at *5 (N.D. Tex. Mar. 9, 2005) (citing *Kormoczy v. Secretary, United States Dep't of Hous. & Urban Dev., ex rel Briggs,* 53 F.3d 821, 824 (7th Cir.1995) (citation omitted)).[5]

Here, although she generally alleges that DHS discriminated against her by not helping her obtain housing in her preferred location, Plaintiff does not identify a protected status upon which the discrimination was allegedly based. Nor does she plead any of the other elements of a housing discrimination claim. She has failed to plead enough facts to state a plausible claim of housing discrimination. *Twombly*, 550 U.S. at 570.

## IV. STATE LAW CLAIMS

Plaintiff's allegations regarding the proceeds of her lawsuit may be liberally construed as asserting state law claims for fraud or conversion. (*See* doc. 14 at 4.)[6]

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the

---

[5] This test was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6] Plaintiff also specifically alleges fraud in connection with her utility bills. (*See* doc. 13 at 1-2.)

5

federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims because they arise from the same "common nucleus of operative facts" as his federal claim. Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given Plaintiff's failure to state a claim for relief against the defendants in federal court, or otherwise show that a genuine controversy exists between the parties, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved.

6

*See McCall v. Peters*, No. 3:00–CV–2247–D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, the Court should exercise supplemental jurisdiction and review the claims on the merits.

### A. <u>Fraud</u>

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.[7] *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with

---

[7] Federal Rule of Civil Procedure 9(b) states:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

7

particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

Plaintiff's general allegations of fraud unsupported by factual allegations are insufficient to meet the pleading requirements for a fraud claim against any defendant, so any fraud claim should be dismissed.

**B.     Conversion**

Under Texas law, a claim for conversion has four elements: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Settlement Capital Corp., Inc. v. Pagan*, 649 F.Supp.2d 545, 558 (N.D.Tex. 2009) (citing *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex.App.-Houston [1st Dist.] 2006, no pet.)).

A conversion claim "has a two-year statute of limitations." *Sykes v. Pub. Storage Inc.*, 425 F. App'x 359, 362 (5th Cir.2011) (citing Tex. Civ. Prac. & Rem.Code § 16.003(a) ("conversion of personal property")). The limitations period "begins to run at the time of the alleged unlawful taking." *Roehrs v. Conesys, Inc.*, No. CIV.A. 3:05–CV–829–M, 2005 WL 3454015, at *2 (N.D.Tex. Dec.14, 2005) (citing *Rogers v. Ricane Enterprises, Inc.*, 930 S.W.2d 157, 166 (Tex.App.-Amarillo

1996, writ denied.)).

Plaintiff contends that her $40 million in lawsuit proceeds were placed at Wells Fargo in 2005, that she has not seen or heard of it since, and that her landlord, banks and others took it. (*See* doc. 3 at 1, 4-6; doc. 12 at 2; doc. 14 at 1.) Even assuming for purposes of screening that she has sufficiently alleged a plausible conversion claim against those defendants she specifically identified as being involved in taking her money, her claims are long-barred by the two-year statute of limitations and should be dismissed.

## V. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed by court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A pro se plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff was sent two separate magistrate judges's questionnaires to obtain more information about her claims. Her responses, which constitute an amendment to the complaint, *see*

9

*Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994), total 174 pages. She also subsequently filed two supplements to her filings, but has still not stated a plausible claim against any defendant. In addition, most of her claims going back to events in 2005 and 2013 appear time-barred. Because she appears to have pled her best case, no further opportunity to amend is warranted.

## VI. RECOMMENDATION

Plaintiff's claims should be **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2) for failure to state a claim.

**SO RECOMMENDED on this 31st day of May, 2022.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE